UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEDCENTER HOLDINGS INC., MEDCENTER SOLUTIONS SA, MED SOLUTIONS MÉXICO, S. DE R.L. DE C.V. AND MEDCENTER SOLUTIONS DO BRASIL SA,<br><br>*Plaintiffs*,<br><br>v.<br><br>WEBMD HEALTH CORP., MEDSCAPE, LLC, and WEBMD GLOBAL LLC,<br><br>*Defendants.* | 1:20 Civ. 00053 (ALC) (GWG) |

## STIPULATED ORDER ESTABLISHING DOCUMENT AND ELECTRONICALLY STORED INFORMATION PRODUCTION PROTOCOL

Plaintiffs Medcenter Holdings Inc. ("Medcenter Holdings"), Medcenter Solutions SA ("Medcenter Argentina"), Med Solutions México, S. de R.L. de C.V. ("Medcenter Mexico"), and Medcenter Solutions do Brasil SA ("Medcenter Brazil") (collectively "Medcenter"), and Defendants WebMD Health Corp., Medscape, LLC ("Medscape") and WebMD Global LLC ("WebMD Global") (collectively the "WebMD Defendants") (altogether, "Parties," and each individually a "Party"), by and through their attorneys, have stipulated and agreed to the entry of a Stipulated Order Establishing Document and Electronically Stored Information Production Protocol (the "Protocol" or "Order") governing the discovery, collection, and production of documents, including electronically stored information ("ESI"), in response to discovery requests ("Discoverable Information") in the above-captioned litigation (the "Action").

The Parties anticipate engaging in discovery proceedings in the Action, and their counsel have engaged in substantive discussions regarding the discovery of documents and ESI. The Parties mutually seek to reduce the time, expense, and other burdens of discovery of hard copy

1970874.1

documents and ESI, and to better define the scope of their obligations with respect to producing such information and materials. This Protocol does not prevent the Parties from negotiating additional agreements regarding discovery as may be necessary in the course of the Action. This Protocol is not intended to expand any document storage, preservation, or production requirement beyond those imposed by the Federal Rules of Civil Procedure or to limit any protections otherwise available to a Party under the common law, the Federal Rules of Civil Procedure, or the Federal Rules of Evidence.

The Court, having reviewed the agreement and stipulations of the Parties, finds that good cause supports the entry of this Protocol.

Accordingly, pursuant to Rule 26 of the Federal Rules of Civil Procedure, it is hereby ORDERED that all the discovery, collection, and production of documents or ESI in the Action shall be subject to the terms and provisions set forth below.

I. **GENERAL PROVISIONS**

1. **Discoverability and Admissibility.** Nothing in this Protocol shall be construed to affect the admissibility of Discoverable Information. All objections to the discoverability or admissibility are preserved and may be asserted at any time.

2. **Meet and Confer.** The Parties agree to meet and confer regarding any disagreements that arise as a result of the implementation of this Protocol or other discovery-related matters. To the extent a Party that is producing Discoverable Information (a "Producing Party") reasonably expects production of specific paper documents or ESI will be impractical or unduly burdensome, the Parties will meet and confer in good faith to attempt to agree on an acceptable format for production pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure. This Protocol is not intended to expand the Parties' obligations under Rules 1, 26, and

34 of the Federal Rules of Civil Procedure.

3. **Modification.** This Protocol may be modified or amended either by written agreement of the Parties submitted to the Court for approval or by order of the Court. Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing.

## II. SCOPE & PRESERVATION

1. **General.** The procedures and protocols outlined herein govern the production of Discoverable Information by all Parties to this Action, whether they currently are involved or become so in the future. The Parties will take reasonable steps to comply with this agreed-upon Protocol for the production of Discoverable Information.

2. **ESI.** Shall mean any electronically stored information, including but not limited to: email; word-processing documents; spreadsheets; electronic slide presentations; databases; and other reasonably accessible structured or unstructured data reasonably anticipated to be subject to discovery pursuant to the Federal Rules of Civil Procedure.

3. **Preservation and Not Reasonably Accessible ESI.** The Parties agree that the circumstances of the Action do not warrant the preservation, collection, review, production, or identification on a privilege log of ESI that is not reasonably accessible. For purposes of this Paragraph, the Parties agree that the following categories of ESI are presumed not reasonably accessible; a Party may rebut this production via a specific request if that Party can demonstrate good cause:

   a. Voicemail recordings to the extent not subject to the provisions of this Protocol concerning embedded objects (e.g., a voicemail recording embedded in or attached to an email).

b. Mobile devices and ESI stored on mobile devices, including smart phones or tablets, to the extent data stored on such mobile devices is available from other reasonably accessible electronic sources, such as an email server, system, or application that operates commercially accepted back-up or synchronization technology.

c. Data that is not synchronized is not reasonably accessible ESI. Any data remaining from systems no longer in use that is unintelligible to and inaccessible by the systems currently in use.

d. Data deleted, erased, or overwritten in the ordinary course of business, whether fragmented or whole, before the time a preservation obligation in this matter came into effect.

e. Online access data such as temporary internet files, history, cache, and cookies.

f. Corrupted data or otherwise inaccessible files that cannot be recovered by the systems currently in use.

g. Data stored in random access memory, cache memory, or in temporary or cache files, including internet history, web browser cache, and cookie files, wherever located.

h. Encrypted data/password protected files, where the key or password cannot be ascertained absent extraordinary efforts. At a minimum, a Party must attempt to retrieve the necessary key or password from current employees and former employees whose contact information is available to the Party. Where a Producing Party cannot ascertain the key or password to a password protected file or to encrypted data, the Producing Party shall notify the Requesting Party in writing of the existence of the file, the file name, file size,

and any other metadata available regarding the file.

Nothing in this Protocol prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible within the meaning of Rule 26(b)(2)(B) of the Federal Rules of Civil Procedure.

4. **Identification of Collection Sources.** The Parties shall meet and confer regarding: (a) the identity and/or role of custodians possessing relevant information from whom documents will be collected and produced; (b) relevant data sources, including custodial, non-custodial, and third-party documents; and (c) any applicable and appropriate timeframes for the collection, review, and production of documents.

5. **Search Methodology**. The Parties will confer regarding search methodologies, search terms, date restrictions and custodian restrictions. Before implementing any search based on key word search terms, the Producing Party initially will provide a list of proposed search terms to the Requesting Party and the Requesting Party will suggest any revisions to such terms. The Parties will discuss those terms and any additional terms, or other requested changes, proposed by the Requesting Party.

6. **Use of technology assisted review ("TAR") or similar technologies**. The parties agree to meet and confer concerning any proposal to use technologies to reduce the number of documents to be reviewed or produced. Without otherwise limiting any party's rights under this Order, in the event of disagreement over any TAR method that a responding party intends to use, the requesting parties shall have the right, within 10 business days of the conclusion of meet and confers, to seek an Order from the Court addressing its concerns about the intended method.

III. **FILTERING ESI**

1. **De-duplication.** A Producing Party will make reasonable efforts to de-duplicate

identical ESI across its own productions, as follows:

    a.    <u>Electronic Documents that Are Not Email</u>.  Duplicate non-email electronic documents (such as Microsoft Word documents) may be identified based upon a commercially accepted method (e.g., MD5 or SHA-1 hash values) for binary file content. All electronic documents bearing an identical value are a duplicate group. The Producing Party may produce only one document image or native file for duplicate ESI documents for each member of the duplicate group; however, the Producing Party will identify the additional custodian(s) (*i.e.*, All Custodians metadata field set forth in Paragraph IV.9 below) for duplicate documents not produced to the extent such information can be automatically populated by the processing of the documents.

    b.    <u>Email</u>.  Duplicate email or other messaging files may be identified based upon a commercially accepted method (e.g., MD5 hash values) generated for the entire email family. Email families bearing an identical value are considered a duplicate group. The Producing Party may produce only one document image or native file for duplicate ESI documents for each member of the  duplicate group; however, in the event that email is collected from a custodial source the Producing Party will identify each custodian(s) (i.e., All Custodians metadata field set forth in Paragraph IV.9 below) from whom the duplicate email was collected, provided that such information can be automatically populated with industry standard ESI processing tools.

    c.    A Party may apply commercially accepted "email thread suppression" techniques and/or "near-duplicate de-duplication" software in producing ESI in order to limit the scope of the ESI undergoing review and/or production.

2.    **De-NISTing.**  ESI collections will be De-NISTed, removing commercially

available operating system and application file information contained on the current NIST file list.

       3.    **Zero-byte Files.**  The Parties shall filter out files identified as zero bytes in size and any logo files.

       4.    **Embedded Objects.**  Embedded objects or files such as Excel spreadsheets, Word documents, or audio and video files, shall be extracted and searched consistent with its category of ESI. Non-substantive embedded files, such as MS Office embedded images, Email in-line images (logos, etc.), need not be extracted. All embedded files produced under this procedure shall be produced subject to the same requirements set forth in this Protocol. For production purposes, embedded files shall be identified as attachments to the parent document in which the file was embedded, and load files for such embedded files shall refer to the parent document in which the file was embedded.

### IV.    PRODUCTION FORMAT

       1.    **TIFF/Native File Format Production.**  The default production format for unstructured discoverable ESI will be black-and-white Group IV single-page TIFF (300 DPI) with document-level extracted text files or Optical Character Recognition ("OCR") text files (for redacted records) and a standard delimited .DAT file containing document-level text files and the agreed upon meta-data fields. Further:

       a.    ESI will be produced in "last saved" or "last modified" format consistent with and without limiting other provisions in this Order or the parties' discovery requests.

       b.    If a color image is produced in black and white, a Party may request the Producing Party produce the file in color or original native file to the extent color would assist in the interpretation and understanding of the document. The Parties agree that they shall not unreasonably withhold production of any document in color or as a native format

where color is needed for interpretation of that document, to the extent the source document is reasonably accessible.

      c.      All ESI whose native format is that of a spreadsheet (e.g., Microsoft Excel), presentation formats (*e.g.,* PowerPoint), audio files, video files and other types of ESI that cannot be accurately converted to TIFF images shall be produced with a single-page placeholder (Group IV .tiff image) stating it is "produced as native" and shall be produced in its original native format.

      d.      A Producing Party retains the option to instead produce ESI in native formats.

      2.      **Document Text.**  For documents that were originally created and stored as electronic files and which do not have redactions, where reasonably available, the Producing Party will produce the extracted full text (not OCR) from the body of each document in individual document-level TXT files. OCR text will be provided for documents without available extracted text (e.g., non-searchable PDFs). Image cross-reference files will also be produced whether the text is extracted or OCR. For documents that were originally stored as electronic files and which have redactions, the OCR text from the redacted image(s) associated with each document will be produced, in individual document-level TXT files.  "TEXT" folder directories will group 1,000 document text files each, separate from image directories.

      3.      **Database Production.**  The Parties shall meet and confer on the identity of any databases and/or files created in proprietary applications (e.g., structured data), and the format in which responsive data should be produced from those systems to the extent reasonably possible (e.g., export to Microsoft Access or SQL).

      4.      **Numbering/Endorsement.**  All produced Discoverable Information will have a

unique Control Identification Number or Bates number assigned, regardless of the format of the Discoverable Information, and the file produced will be named with the unique identifier. For Discoverable Information produced in TIFF image format, each TIFF image will have a legible, unique page identifier electronically endorsed onto the image at a location that does not obliterate or obscure any information from the source document. A Producing Party should use a consistent format for the bates numbers it uses across its productions. Separate folders will not be created for each document.  Further:

    a.    In the case of materials deemed confidential in accordance with any applicable federal, state, or common law, and/or designated as such pursuant to the Stipulated Protective Order that was entered in this Action on May 21, 2021, such materials should be marked in accordance with the Stipulated Protective Order.  Each responsive document produced in native format will have any confidentiality designation identified in the filename of the native file, or indicated on its corresponding TIFF placeholder.

    b.    The Parties agree to meet and confer if there are any disputes regarding the specific details of numbering and endorsement format.

5.    **<u>Scanned Documents & Hard Copies</u>.**  The Parties agree that paper documents that contain Discoverable Information may be scanned and produced in an imaged format set forth in Paragraph IV.1 above.  Further:

    a.    When scanning paper documents, the Parties shall undertake reasonable efforts to ensure that distinct documents are not merged into a single record, and single documents are not split into multiple records (i.e., the Parties shall attempt to logically unitize scanned hard copy documents) and be produced in the order in which they are kept in the usual course of business.

b.  All pages now stapled or fastened together shall be scanned with all attachments currently or previously appended to each document, regardless of whether such attachments themselves would be independently responsive.

c.  The Producing Party agrees to produce every copy of a document on which there appears to be a notation or marking of any sort (including but not limited to affixed sticky notes which will also be imaged and produced) not appearing on any other copy or any copy containing different attachments from any other copy, provided that such notation is in any way relevant to the subject matter of this lawsuit.

d.  Consistent with Federal Rules of Civil Procedure 26 and 34, a Producing Party may make hard copy records available to a Requesting Party for inspection and copying. In such instances, the Parties shall meet and confer regarding the time, location, and other considerations with respect to the inspection and copying.

6.  **Native Files.**  The Parties agree that the default production format for unstructured discoverable ESI is the imaged format set forth in Paragraph IV.1 above. Subsequent to the production of image formats, the Requesting Party may within a reasonable time and upon a showing of particularized need, request from the Producing Party that certain imaged files be produced in native format according to the following protocol:

a.  The Requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in native file format. The Requesting Party also shall provide the reasons for the request.

b.  The Producing Party shall either agree and produce the native files, or object to the demand for any particular file as unreasonable as follows:

i.  Within ten (10) calendar days, or such time to which the Parties

agree, the Producing Party will respond in writing, either agreeing to produce the requested documents or setting forth its reason for objection to the production of the requested native format files.

    ii.    If the Producing Party agrees to the request, the production shall be made within fifteen (15) calendar days of the notification of agreement or as otherwise agreed to by the Parties.

    iii.    If the Producing party does not agree to the request, the Parties will promptly meet and confer regarding the request and corresponding objection(s), and if the Parties are unable to agree as to the production of the requested files in native format, the Parties shall submit the matter to the Court for resolution.

7.    **Encrypted Files.**  To the extent practical, the Producing Party shall take reasonable efforts to ensure that all encrypted files are decrypted prior to processing and searching, and shall produce passwords for any password-protected natives files produced to the extent the passwords are reasonably available.

8.    **Production Media.**  The Producing Party may produce documents via a secure file transfer mechanism or on an external hard drive ("Production Media"). All Production Media will be encrypted prior to production and the Producing Party will provide a decryption key to the Requesting Party in a communication separate from the production itself.

9.    **Metadata.**  The Parties agree to undertake reasonable efforts to produce a load file containing, if available in the normal course and reasonably practical to do so, the metadata fields below, and to the extent a document is not redacted (separately addressed):

| Field | Data Type | Paper | eDocs & Email Attachments | Email |
|---|---|---|---|---|
| ProdBeg | Integer – Text | Starting Bates # | Starting Bates # | Starting Bates # |
| ProdEnd | Integer – Text | Ending Bates # | Ending Bates # | Ending Bates # |
| ProdBegAttach | Integer – Text | Starting bates # of document family | Starting bates # of document family | Starting bates # of document family |
| ProdEndAttach | Integer – Text | Ending bates # of document family | Ending bates # of document family | Ending bates # of document family |
| AttachmentCount | Integer – Text |  | In case where document contains attachment/s, the number of attachments included within the document | In case where document contains attachment/s, the number of attachments included within the document |
| Custodian | Text | Name of person the document was collected from | Name of person the document was collected from | Name of person the document was collected from |
| Duped Custodians | Text | Name of persons from whom de-duplicated document was collected and de-duplicated pursuant to terms herein | Name of persons from whom de-duplicated document was collected and de-duplicated pursuant to terms herein | Name of persons from whom de-duplicated document was collected and de-duplicated pursuant to terms herein |
| From | Text – paragraph |  |  | Sender of message |
| To | Text – paragraph Separate entries with ";" |  |  | Recipients of message |
| CC | Text – paragraph Separate entries with ";" |  |  | Copied recipients |
| BCC | Text – paragraph Separate entries with ";" |  |  | Blind copied recipients |
| Subject | Text – paragraph |  |  | Subject of message |
| Date/Time_Sent | Date (mm/dd/yyyy hh:mm:ss) |  |  | Date and Time message sent All time fields should be processed in "Coordinated |

| Field | Data Type | Paper | eDocs & Email Attachments | Email |
|---|---|---|---|---|
| | | | | Universal Time" (UTC Time Zone) if feasible |
| Date/Time_Rcvd | Date (mm/dd/yyyy hh:mm:ss) | | | Date and Time message received |
| FileName | Text – paragraph | | Name of original file including extension | Name of original file including extension |
| FileExtension | Text | | Extension of original file | Extension of original file |
| Date/Time_Created | Date/Time (mm/dd/yyyy hh:mm:ss) | | Date and time file was created | |
| Date/Time_Modified | Date/Time (mm/dd/yyyy hh:mm:ss) | | Last modified date and time | |
| Sort_Date/Time | Date/Time (mm/dd/yyyy hh:mm:ss) | | Date and time taken from (Email) Date/Time_Sent, (Email) Date/Time_Rcvd, or (EDocs) Date/Time_Modified, repeated for parent document and all children items to allow for date sorting. | |
| Title | Text – paragraph | | Title from document metadata | |
| Author | Text – paragraph | | Document author from metadata | |
| Confidentiality | Text | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document |
| Hash | Text | | MD5 or SHA-1 Hash Value of document | MD5 or SHA-1 Hash Value of document |
| OriginalFilePath | Text | | File path of the native document as it existed in its original environment. | File path of the native document as it existed in its original |

| Field | Data Type | Paper | eDocs & Email Attachments | Email |
|---|---|---|---|---|
| | | | | environment. |
| NativeLink | Text – paragraph | | Path including filename to the associated native file if produced (Relative Path) | Path including filename to the associated native file if produced (Relative Path) |
| TextLink | Text – paragraph | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) |
| Redaction | hasredaction(onDocument); hasredaction(onMetadata) | | States whether a document or metadata of a document has been redacted | States whether a document or metadata of a document has been redacted |
| Message ID | Text | | | MS Outlook Message ID or similar number in other message systems |

a. No Party has an obligation to create or manually code metadata fields that do not exist as part of the original metadata of the electronic document except for: BegBates; EndBates; BegAttach; EndAttach; Confidentiality; and Custodian. Custodians should be identified using the convention "Last Name, First Name."

b. The Parties may rely on the metadata automatically generated by the processing of the ESI, and no Party has an independent obligation to review the metadata of individual files to ensure the metadata's accuracy.

c. The Producing Party may redact from any TIFF image, metadata field, or native file material that is protected from disclosure by applicable privilege, immunity, law or regulation, or as permitted by the Stipulated Protective Order governing this

1970874.1                                         14

Action. Redactions must be limited to only language or information within document deemed protected. The Producing Party shall identify redactions clearly on the face of any TIFF image, either with "Redacted" or the redaction reason on the face of the document.

        d.      If a document that otherwise would be produced in native format requires redaction, such document may be produced in TIFF format with an OCR text file in accordance with this Protocol. The native file version of redacted documents need not be produced unless the Parties agree otherwise. For avoidance of doubt, the parties may provide native redactions of excel files or other files produced in native format should they elect to do so.

10.    **Load Files.** The following load files may be combined to address all content provided within a single production (*i.e.*, all documents produced on a single piece of media or through a single file transfer):

        a.      <u>Image Cross-Reference Load File</u>. Provide a comma-delimited image load file that contains document boundary reference data, page counts, and media volume information.

        b.      <u>Text Cross-Reference Load File</u>. For all TXT files created in accordance with Paragraph IV.2 above, provide a comma-delimited load file with each document's beginning Bates number along with the full path to the associated extracted text/OCR text file.

        c.      <u>Native Cross-Reference Load File</u>. For all native files, provide a comma-delimited load file with each document's Bates number along with the full path to the produced native file.

      d.    <u>Structured ESI Cross-Reference Load File</u>.  For all reports produced under Paragraph IV.3 above, provide a comma-delimited load file with each document's Bates number along with the full path to the produced report.

## V.    <u>OTHER ISSUES</u>

1.    **<u>Costs.</u>**  The cost of preserving, collecting and producing documents shall be borne by the Producing Party. In the event, however, that a Requesting Party requests ESI, documents, or information that would result in the production of cumulative or repetitive discovery that otherwise imposes an undue burden or expense upon a Producing Party, the Producing Party may object. The Parties shall work in good faith to resolve any such objection. In the event the Parties are unable to resolve such an objection, and upon substantiation of that objection in writing by the Producing Party, the Producing Party may move the Court for an order shifting the cost of producing such discovery to the Requesting Party.

2.    **<u>English Language.</u>**  To the extent an English translation exists for a document in the ordinary course of business or in the custodian's files, both the non-English version and the English version shall be produced. If no English version of the document is available, the Producing Party does not have an obligation to produce an English translation.

3.    **<u>Producing Party's Right to Review Own Documents.</u>**  Nothing contained herein limits a Producing Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

4.    **<u>Non-Waiver</u>**. Nothing in contained herein shall constitute a waiver of any objection to any discovery request, including objections based on burden or overbreadth.

| | |
|---|---|
| Dated: New York, New York<br>      January 3, 2022 | Respectfully submitted, |

s/Barry Werbin
BARRY WERBIN
LAWRENCE M. KAYE
GABRIELLE C. WILSON
HERRICK, FEINSTEIN LLP
2 Park Ave.
New York, NY 10016
bwerbin@herrick.com
lkaye@herrick.com
gwilson@herrick.com

Tel. (212) 592-1400

*Counsel to Plaintiffs*

s/Stephen P. Farrelly
\* Defendants consent to the use of e-signature pursuant to Rule 8.5 of the SDNY ECF Rules & Instructions

STEPHEN P. FARRELLY
JEFFREY A. MITCHELL
BROWNE GEORGE ROSS O'BRIEN ANNAGUEY & ELLIS LLP
5 Penn Plaza, 24th Floor
New York, NY 10001
sfarrelly@bgrfirm.com
jmitchell@bgrfirm.com

Tel. (212) 413-2600

*Counsel to Defendants*

IT IS SO ORDERED.

Dated: January 3, 2022

GABRIEL W. GORENSTEIN
United States Magistrate Judge

1970874.1

17