# COMISION ROGATORIA

## LETTER OF REQUEST

### COMMISSION ROGATOIRE

**Convenio de 18 de marzo de 1970**

**sobre la Obtención de Pruebas en el Extranjero en Materia Civil o Comercial**

*Hague Convention of 18 March 1970 on the*

*Taking of Evidence Abroad in Civil or Commercial Matters*

*Convention de La Haye du 18 mars 1970 sur*

*l'obtention des preuves à l'étranger en matière civile ou commerciale*

| | | |
|---|---|---|
| 1. | **Remitente**<br><br>*Sender*<br><br>*Expéditeur* | US District Court for the Southern District of New York<br>500 Pearl St.<br>New York, NY 10007<br>United States |
| 2. | **Autoridad Central del Estado requerido**<br><br>*Central Authority of the Requested State*<br><br>*Autorité centrale de l'État requis* | International Legal Assistance Department<br>Office of the Legal Advisor<br>Ministry of Foreign Affairs and Worship<br>Esmeralda 1212, 4th Floor, Of. 402<br>Ciudad Autónoma de Buenos Aires<br>Argentina |
| 3. | **Persona/autoridad judicial a la que debe retornarse la solicitud una vez ejecutada**<br><br>*Person to whom the executed request is to be returned*<br><br>*Personne à qui les pièces constatant l'exécution de la demande doivent être renvoyées* | Clerk's Office<br>US District Court for the Southern District of New York<br>500 Pearl St.<br>New York, NY 10007<br>United States<br><br>The name and case number given in item 5(c), below, should be referenced on the correspondence. |
| 4. | **Especificación de la fecha en la que la autoridad requirente precisa acuse de recibo de la solicitud enviada**<br><br>*Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request*<br><br>*Indiquer la date limite à laquelle l'autorité requérante désire recevoir la réponse à la commission rogatoire* | |
| | **Fecha límite**<br><br>*Date*<br><br>*Date limite* | May 26, 2022 |
| | **Justificación de la urgencia**<br><br>*Reason for urgency*<br><br>*Raison de l'urgence* | Under the scheduling order currently applicable (subject to potential extensions of time the Requesting Authority may grant), May 26, 2022 is the deadline for taking evidence before trial. |

**De conformidad con el artículo 3 del Convenio, la autoridad abajo firmante tiene el honor de remitir la siguiente solicitud**

*In conformity with Article 3 of the Convention, the undersigned applicant has the honour to submit the following request:*

*En conformité de l'article 3 de la Convention, le requérant soussigné a l'honneur de présenter la demande suivante :*

| | | |
|---|---|---|
| **5. a** | **Autoridad requirente (Art. 3(a))** <br><br> *Requesting authority (Art. 3(a))* <br><br> *Autorité requérante (art. 3(a))* | US District Court for the Southern District of New York <br> 500 Pearl St. <br> New York, NY 10007 <br> United States |
| **b** | **Para la autoridad competente de (Art. 3(a))** <br><br> *To the Competent Authority of (Art. 3(a))* <br><br> *À l'Autorité compétente de (art. 3(a))* | Argentina |
| **c** | **Tipo y número de procedimiento judicial** <br><br> *Names of the case and any identifying number* <br><br> *Nom de l'affaire et numéro d'identification de l'affaire* | Medcenter Holdings Inc., et al. v. WebMD Health Corp., et al., Civ. A. No. 1:20-cv-00053-ALC-GWG |

| | |
|---|---|
| **6.** | **Nombres y direcciones de las partes y sus representantes (incluyendo los representantes que hubiere en el Estado de ejecución) (Art. 3(b))** <br><br> *Names and addresses of the parties and their representatives (including representatives in the Requested State) (Art. 3(b))* <br><br> *Identité et adresse des parties et de leurs représentants (y compris représentants dans l'État requis) (art. 3(b))* |

| | | |
|---|---|---|
| **a** | **Demandante** <br> *Plaintiff* <br> *Demandeur* | See Attachment A |
| | **Representantes** <br> *Representatives* <br> *Représentants* | See Attachment A |

| | | | |
|---|---|---|---|
| *b* | **Demandado**<br><br>*Defendant*<br><br>*Défendeur* | See Attachment A |
| | **Representantes**<br><br>*Representatives*<br><br>*Représentants* | See Attachment A |
| *c* | **Otros intervinientes**<br><br>*Other parties*<br><br>*Autres parties* | Not Applicable |
| | **Representantes**<br><br>*Representatives*<br><br>*Représentants* | Not Applicable |

| | | |
|---|---|---|
| 7. *a* | **Naturaleza del procedimiento (divorcio, reclamación de paternidad, incumplimiento contractual, responsabilidad por los daños causados por productos defectuosos etc.) (Art. 3(c))**<br><br>*Nature of the proceedings (divorce, paternity, breach of contract, product liability, etc.) (Art. 3(c))*<br><br>*Nature et objet de l'instance (divorce, filiation, rupture de contrat, responsabilité du fait des produits, etc.) (art. 3(c))* | The case is a civil action for damages, an accounting, and an injunction arising out of an alleged misappropriation of trade secrets under the US Defend Trade Secrets Act and under New York law, and out of an alleged breach of contract. |
| *b* | **Resumen de la solicitud**<br><br>*Summary of complaint*<br><br>*Exposé sommaire de la demande* | See Attachment B |
| *c* | **Resumen de la contestación y demanda reconvencional**<br><br>*Summary of defence and counterclaim\**<br><br>*Exposé sommaire de la défense ou demande reconventionnelle* | See Attachment B |

| | | |
|---|---|---|
| *d* | **Otra información necesaria o documentos**<br><br>*Other necessary information or documents\**<br><br>*Autres renseignements ou documents Utiles* | The documents annexed to this letter of request as Exhibits A and B to Attachment C are the documents that the witness will be asked to authenticate or comment on. The witness will also be questioned about the documents, and they are referred to in Attachment C, referenced in Item 10. |

| | | |
|---|---|---|
| **8. a** | **Prueba a practicar o cualquier otra actuación procesal que deba ejecutarse**<br><br>*Evidence to be obtained or other judicial act to be performed (Art. 3(d))*<br><br>*Actes d'instruction ou autres actes judiciaires à accomplir (art. 3(d))* | The Requesting Authority requests that the appropriate authority of Argentina take the testimony under oath of a non-party resident in Argentina, Estefania Aristu, whose details are given below. |
| *b* | **Finalidad de la prueba o actuación procesal interesado**<br><br>*Purpose of the evidence or judicial act sought*<br><br>*But des actes à accomplir* | The purpose of the judicial act sought is to obtain testimony for use at trial from Ms. Aristu, whose testimony cannot be obtained in any other way, and who is a material witness with personal knowledge concerning defendants' use of trade secret data obtained from plaintiffs' business databases that the plaintiffs allege was misappropriated. The witness will also be asked to acknowledge and comment on two documents, Exhibits A and B to Attachment C, that will be shown to her. This request does not seek pretrial discovery of documents. |

| | | |
|---|---|---|
| **9.** | **Identidad y dirección de las personas que deban ser oídas**<br><br>*Identity and address of any person to be examined*<br><br>*(Art. 3(e))\**<br><br>*Identité et adresse des personnes à entendre (art. 3(e))* | Estefania Aristu<br>Domicile: RIVADAVIA 2668, MUNRO, BUENOS AIRES, ARGENTINA (B1605CBL)<br><br>The defendants have also provided the following address for Ms. Aristu: Hernán Wineberg 3008, Olivos (1636), Provincia de Buenos Aires, Argentina.<br><br>National ID number: 33.402.094 |

| | | |
|---|---|---|
| **10.** | **Preguntas a practicar a la persona que debe ser oída o hechos por los que esta persona debe declarar.** | See Attachment C.<br><br>Attachment C references two documents, Exhibits A and B to Attachment C, that are also attached to this letter of request and referenced in Item 7.d. |

| | *Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined (Art. 3(f))\** | |
|---|---|---|
| | *Questions à poser ou faits sur lesquels les personnes susvisées doivent être entendues (art. 3(f))* | |

| 11. | **Documentos o propiedades que deban examinarse**<br><br>*Documents or other property to be inspected (Art. 3(g))\**<br><br>*Documents ou objets à examiner (art. 3(g))* | This Request does not seek the production of documents by the witness.<br><br>Two documents are attached to this letter and referenced in Item 7.d and are referenced in Attachment C, incorporated in Item 10. |
|---|---|---|
| 12. | **Requisito procesal en el que debe prestarse el juramento, declaración o cualquier otra forma especial que deba llevarse a cabo**<br><br>*Any requirement that the evidence be given on oath or affirmation and any special form to be used (Art. 3(h))\**<br><br>*Demande de recevoir la déposition sous serment ou avec affirmation et, le cas échéant, indication de la formule à utiliser (art. 3(h))* | The Requesting Authority requests that the evidence be given on oath or affirmation. |
| 13. | **Métodos de práctica particulares o procedimientos a seguir (ejemplo, verbal o escrita, transcripción literal o resumida, interrogatorio, etc.) (Arts 3(i) y 9)\***<br><br>*Special methods or procedure to be followed (e.g., oral or in writing, verbatim transcript or summary, cross-examination, etc.) (Arts 3(i) and 9)\**<br><br>*Formes spéciales demandées (déposition orale ou écrite, procès-verbal sommaire ou intégral, "cross-examination", etc.) (art. 3(i) et 9)* | The Requesting Authority requests that the hearing be held in person rather than remotely to the extent in person hearings are permissible under Argentine law concerning COVID-19. The Requesting Authority further requests that the questioning proceed in accordance with the Code of Civil and Commercial Procedure of the Province of Buenos Aires or any other applicable Argentine law, and that to the extent permissible, counsel for the parties be permitted to put follow-up questions to the witness through the judge or other officer questioning the witness.<br><br>The witness may designate all or any part of her testimony as "Confidential," "Protected Data," or "Outside Attorneys' Eyes Only Information" as provided in the Stipulated Protective Order overning the Production and Exchange of Confidential Information entered by the Requesting Authority on May 21, 2021, which is attached to this letter of request in Attachment E (the "Protective Order"). Any testimony properly designated shall have the protections against disclosure provided in the Protective Order. The Requesting Authority will, upon an appropriate motion, enforce the Protective Order in accordance with its terms. |

| 14. | **Necesidad de notificación de lugar y tiempo de práctica de la prueba e identidad y dirección de la persona a la que notificar (art. 7)\*** *Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (Art. 7)\** *Demande de notification de la date et du lieu de l'exécution de la requête, de l'identité et de l'adresse de la ou des personnes à informer (art. 7)* | The Requesting Authority requests that the parties and their representatives whose names and addresses are listed on Attachment A be given notice, by mail and, if permisible under Argentine law, by email, of the place and time of the execution of the Request. |
|---|---|---|
| 15. | **Solicitud de asistencia o participación de autoridad judicial procedente de la autoridad requirente para la ejecución de la comisión rogatoria.** *Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Art. 8)\** *Demande d'assistance ou de participation des magistrats de l'autorité requérante á l'exécution de la commission rogatoire (art. 8)* | Not Applicable |
| 16. | **Especificación de alguna dispensa o prohibición de declarar previstas en la legislación del Estado requirente.** *Specification of privilege or duty to refuse to give evidence under the law of the Requesting State (Art. 11(b))\** *Spécification des dispenses ou interdictions de déposer prévues par la loi de l'État requérant (art. 11(b))* | See Attachment D. |

| 17. | **Las costas y gastos en que se haya incurrido y que son reembolsables  conforme el párrafo segundo del artículo 14 o conforme el artículo 26 de la Convención serán soportadas por:**<br><br>*The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by:\** <br><br>*Les taxes et frais donnant lieu à remboursement en vertu de l'article 14, alinéa 2 et de l'article 26 seront réglés par :* | The Plaintiffs |
|---|---|---|

| **Date of request**<br><br>*Date de la requête* | Click or tap here to enter text. |
|---|---|
| **Signature and seal of the requesting authority**<br><br>*Signature et sceau de l'autorité requérante* | |

***Omitir si no procede**/ Omit if not applicable / Ne remplir qu'en cas de nécessité*

<u>ATTACHMENT A</u>

The plaintiffs are:

Medcenter Holdings Inc.
PO Box 309, Ugland House, Grand Cayman, KY1-1104

Medcenter Solutions S.A.
Amenabar 1935, Piso 5to., Depto. 20.,  C.A.B.A , Argentina

Med Solutions México, S. de R.L. de C.V.
Blvd  Manuel Avila Camacho 1903, 600 A, Ciudad Satelite, Naucalpan de Juarez, Mexico 53100

Medcenter Solutions do Brasil S.A.
Av. Brigadeiro Faria Lima, 1226, 8º Andar, Jardim Paulistano, São Paulo/SP, CEP 01451-001

They are represented in the US action by:

Barry Werbin
Gabrielle C. Wilson
Herrick, Feinstein LLP
Two Park Ave.
New York, NY 10016 USA
+1 (212) 592-1418
bwerbin@herrick.com
gwilson@herrick.com

They are represented in Argentina by and authorize the following attorneys:

Pablo Daniel Brusco (pbrusco@brons.com.ar); or Andrea Tamara De Chiara; or
(adechiara@brons.com.ar); or Mariana Laura Sierra (msierra@brons.com.ar); or Virginia
González (vgonzalez@brons.com.ar).
Brons & Salas
Olga Cossettini 363 (C1107CCG)
Ed. Yacht VI. Puerto Madero
Buenos Aires
Ituzaingó 278, casillero 2109,
San Isidro (B1642DPF)
Provincia de Buenos Aires

The defendants are:

WebMD Health Corp.
395 Hudson Street, New York, New York 10014 USA

Medscape, LLC

825 Eighth Avenue, 11th Floor, New York, New York 10019 USA

WebMD Global LLC
111 8th Ave., New York, New York 10011 USA

They are represented in the US action by:

Jeffrey A. Mitchell
Stephen P. Farrelly
Ellis George Cipollone O'Brien Annaguey LLP
152 West 57th Street, 28th Floor
New York, NY 10019 USA
+1 (212) 413-2600
jmitchell@egcfirm.com
sfarrelly@egcfirm.com

ATTACHMENT B

The Plaintiffs allege that since 1999, they have been a dominant provider of medical and pharmaceutical drug information, professional accreditation programs, and continuing education courses for physicians and health care providers throughout Latin America. They allege that they kept, in the course of their business, valuable proprietary databases that had detailed information about (i) physicians and other health care providers throughout Latin America, and (ii) Plaintiffs' past, present, and potential future business and contractual relationships with global and regional pharmaceutical and medical companies, including contact information for high-level management personnel at those companies, highly confidential and extensive details of the Plaintiffs' contracts with its pharmaceutical and medical company clients, and the state of contract negotiations. The Plaintiffs allege that the proprietary information in their databases, concerning Latin American physicians and health care providers, allowed them to make lucrative contracts with many leading multinational and regional pharmaceutical and medical companies to provide online marketing and email promotional campaigns targeting those physicians and health care providers.

The Plaintiffs allege that in 2014, they entered into discussions with the Defendants concerning a potential acquisition of the Plaintiffs' Latin American subsidiaries by the Defendant, WebMD Health Corp. During those discussions, the parties entered into a non-disclosure agreement. During the due diligence process, the Plaintiffs allege that while the Defendants made repeated requests to be given access to selected portions of Plaintiffs' proprietary databases, these requests were refused, but that the Defendants were allowed to view the structure of Plaintiffs' databases on Latin American physicians and health care providers. The Defendants also met with a high-ranking Medcenter Solutions S.A. officer and director,

Mariel Norma Aristu, and her niece, Estefania Aristu, who at the time was an employee of Medcenter Argentina S.A. The Plaintiffs allege that Estefania Aristu was an administrator of its pharmaceutical and medical company client database (hosted by Salesforce) and was one of only a few people with administrative access to that database. The Plaintiffs further allege that Estefania Aristu also acted as the pricing analyst for Medcenter Argentina S.A.

The Plaintiffs allege that the Defendants poached both Mariel Norma Aristu and Estafania Aristu in 2016 based on confidential employment information the Defendants had obtained and shared amongst themselves during the due diligence process. They allege that Mariel and Estefania Aristu conspired to aid the Defendants in misappropriating and using information from the Plaintiffs' confidential databases and other confidential information about Plaintiffs' Latin American business and contractual relationships. In particular, Plaintiffs allege that Estefania Aristu would provide the Defendants with the ability to understand, administer, and use proprietary information derived from Plaintiffs' databases, while Mariel Norma Aristu would directly misappropriate such information from Plaintiffs' databases by downloading or otherwise obtaining the data or generating reports containing the data.

The Plaintiffs allege that this misappropriation was a misappropriation of trade secrets in violation of the U.S. Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.,* and in violation of New York common law. They also allege that the Defendants, by their conduct, breached the nondisclosure agreement entered into as part of the acquisition negotiations.

The Defendants generally deny the allegations of wrongdoing. They have also asserted several affirmative defenses. The Defendants allege that Mariel Norma Aristu was not poached by the Defendants but was forced out of Medcenter Solutions S.A. by its CEO. They allege that the Plaintiffs' claims are barred by waiver, statutes of limitation (*i.e.,* US federal and New York

state law statutory timeframes within which to file such claims in court), and the doctrine of laches (*i.e.*, inequitable delay).  They allege that the Plaintiffs are bringing their claims in bad faith and are therefore estopped to assert them. They allege that the Plaintiffs lack standing because they are no longer in good standing in the jurisdictions where they were organized. They allege that the Plaintiffs materially breached a 2007 collaboration agreement with the Defendants by representing, after the termination of the agreement, that they were affiliated with one of the Defendants.  They allege that the Plaintiffs' claims are barred by the misconduct and unclean hands of the Plaintiffs' CEO.  United States civil procedure does not permit or require the Plaintiffs to plead an answer to these affirmative defenses, but the Plaintiffs generally deny the Defendants' affirmative defenses.

ATTACHMENT C

The Requesting Authority requests that the following questions be put to the witness, who also will be asked to acknowledge and comment on documents attached hereto as Exhibit A and Exhibit B. These questions call for information that is material to the trial of the US action. The Requesting Authority requests that counsel for the parties be given the opportunity to put follow-up questions to the witness, either directly or through the judge, to the extent permitted by Argentine law.

The witness is informed that, under Section 275 of the Argentine Criminal Code, perjury is punishable by imprisonment for between 1 month and 4 years.

**Preliminary Questions required by Argentine applicable regulations ("*Generales de la Ley*"):**

The witness is informed that the Plaintiffs in the Lawsuit are Medcenter Holdings Inc., Medcenter Solutions SA, Med Solutions Mexico, S. de R. L. de C.V, and Medcenter Solutions do Brasil SA, which will be referred to generally as "Medcenter" and that the Defendants in the Lawsuit are WebMD Health Corp., Medscape, LLC, and WebMD Global LLC, which will be referred to generally as "WebMD".

a)      State your name, age, status, occupation and domicile;

b)      State whether you are related by consanguinity or affinity to any of the parties, and within which degree

c)      State whether you have a direct or indirect interest in the Lawsuit;

d)      State whether you are a close friend or enemy, of any of the parties to the Lawsuit;

e)      State whether you are an employee, creditor or debtor of any of the parties to the Lawsuit, or whether you have any other type of relationship with them.

**Main Questions**

1.      Where are you currently employed and at what address?

2.      What is the highest level of education that you have completed?

3.      Have you discussed the Lawsuit or these questions with anyone before today?

4.      With whom did you discuss the Lawsuit or these questions before today and when?

5.      What did you discuss about the Lawsuit or these questions?

6.      What is your relationship with Mariel Aristu?

7.      Have you previously worked with Mariel Aristu and, if so, where did you work with her and for how long?

8.      Have you discussed the Litigation with Mariel Aristu and, if so, what have you discussed?

9.      Were you previously employed by any of the Medcenter companies and, if so, by which companies and for what time periods?

10.     What were your duties and responsibilities when you were employed by each Medcenter company?

11.     What were your  duties and responsibilities when you worked at Medcenter relating to Medcenter's Salesforce Customer Relationship Management database? For the appropriate understanding of this question, "Salesforce" means Medcenter's database that contained data on Medcenter's business, sales, marketing activities, project management and contractual relationships with pharmaceutical industry company clients and pharmaceutical industry executives and influencers, to provide them with online marketing services in Latin America.

12.     Did you have a password or other credentials to access Medcenter's Salesforce database?

13.     Did you ever share with anyone or allow anyone to use your password or access credentials for the Medcenter Salesforce database?  If so, with whom did you share your password or access credentials and why was that done?

14.     What types of data were contained in Medcenter's Salesforce database during the time you worked at Medcenter?

15.     Were you able to create reports from Medcenter's Salesforce database?

16.     Did you ever provide any Medcenter Salesforce data or reports to Marial Aristu while you were employed by Medcenter and, if so, what data or reports did you provide to

her?

17.  While you were employed by Medcenter, did you ever advise Mariel Aristu how to create reports from Medcenter's Salesforce database and, if so, when was that done and why?

18.  While you were employed by Medcenter, did you ever send any data or information that came from Medcenter's Salesforce database to your personal email address or to any other email address that was not in the "corp.medcenter.com" domain and, if so, when was that done and why?

19.  While you were employed by Medcenter, did you ever send any data or information that came from any other Medcenter databases to your personal email address or to any other email address that was not in the "corp.medcenter.com" domain and, if so, when was that done and why?

20.  To whom and to what email addresses did you send the data or information referred to in the questions #18 and #19?

21.  Do you recall WebMD conducting due diligence of Medcenter in connection with a potential acquisition of Medcenter?

22.  When did that due diligence occur?

23.  In connection with that due diligence process, were you interviewed by anyone from WebMD and, if so, what did you discuss and with whom?

24.  During that due diligence process, did you meet in person, including for meals, with any representatives of WebMD and, if so, who did you meet with and what was discussed?

25.  While you were employed by Medcenter, did you communicate or discuss with anyone from WebMD about becoming an employee or consultant for any WebMD company and, if so, what did you discuss and with whom?

26.  **In this act, a copy of an email dated February 18, 2016 from you to Mariel Aristu and an attachment to that email are shown to you. The attachment is a LinkedIn message from Pablo Labbé, "Executive Director at WebMD," to Estefania Aristu (Exhibit A).**

27.  Do you acknowledge the email dated February 18, 2016 and its attachment?

28.  Do you acknowledge that you sent the referenced email and its attachment?

29.  When did you receive the LinkedIn message referred to in question 26 above from Pablo Labbé?

30.  Who was Pablo Labbé?

31.     Did you respond to Pablo Labbé's LinkedIn message and, if so, what did you say and how did you respond?

32.     Can you please tell us about any conversations you had with Pablo Labbé about his LinkedIn message and when you had them?

33.     What was your understanding of Pablo Labbé's comment about "*alguna informacion de Medscape que podria ser de interes para ti*"?  ["some Medscape information that might be of interest to you"]?

34.     Why did you forward Pablo Labbé's LinkedIn message to Mariel Aristu with this email dated February 18, 2016?

35.     Did you discuss Pablo Labbé's LinkedIn message with Mariel Aristu and, if so, what did you discuss with her?

36.     When did you leave Medcenter?

37.     Before you left Medcenter, did you receive any offer to work for any WebMD company and, if so, what was the offer and who made it to you?

38.     When did you start working for any WebMD company?

39.     Were you hired as an employee or consultant by a WebMD company and by which company ?

40.     Did you sign an employment or consulting agreement with a WebMD company and with which company?

41.     Did you discuss your being hired by a WebMD company with Mariel Aristu and, if so, what did you discuss with her?

42.     Can you please describe your duties and responsibilities while working for any WebMD company?

43.     Did your duties include any responsibility for WebMD company databases concerning Latin American pharmaceutical clients and, if so, what were those duties?

44.     **In this act, a copy of a LinkedIn page for Estefania Aristu [Exhibit B] is shown to you.**

45.     Do you acknowledge the LinkedIn page shown to you?

46.     Did you post all the information about yourself on this LinkedIn page?

47.     Is all the information on this LinkedIn page (Exhibit B) accurate ?

48.     Did your responsibilities at Medscape include the development and design of digital marketing plans for pharmaceutical companies in Latin America?

49.     Were you responsible at Medscape for SEO (search engine optimization) strategies, e-mail marketing, social listening, and websites for Medscape, as it states in your LinkedIn profile?

50.     What kind of work did you do for Medscape concerning the pharmaceutical companies named in your LinkedIn profile shown as Exhibit B, specifically: Abbvie, Abbott, Allergan, Amgen, AstraZeneca, Boehringer Ingelheim, Janssen Cilag, Eli-Lilly, MSD, Novartis, NovoNordisk, Roche and Bayer?

51.     When you were working for Medscape, how did you know which persons to communicate with at the pharmaceutical companies referred to in question 50 and did that knowledge come from your work at Medcenter?

52.     Were any of the pharmaceutical companies referred to in your LinkedIn profile, shown as Exhibit B, also customers of Medcenter as of the date you left Medcenter?

53.     Did you ever provide any information or data to anyone at Medscape about Medcenter's Latin American pharmaceutical clients or projects and, if so, what information or data did you provide and to whom?

54.     Can you please explain why your LinkedIn profile, shown as Exhibit B, lists the same responsibilities and pharmaceutical company clients for both your work at Medcenter and Medscape?

55.     Did anyone working for a WebMD company ever ask you questions about Medcenter's Latin American pharmaceutical clients and, if so, who asked you and why?

56.     Did anyone working for a WebMD company ever ask you questions about Medcenter's data concerning Latin American physicians and, if so, who asked you and why?

57.     Did you ever input any data or information that came from Medcenter's business databases into any databases or computer system owned by a WebMD company and, if so, what was that data or information?

58.     To your knowledge, did anyone else input any data or information that came from Medcenter's business databases into any databases or computer system owned by a WebMD company and, if so, what was that data or information?

59.     While you worked for any WebMD company, did you use or have possession of any information about Medcenter's business activities or databases and, if so, what was that information?

60.     While you worked for any WebMD company, to your knowledge did anyone else working for WebMD use or have possession of any information about Medcenter's business activities or databases, and if so what was that information?

61.     At the time you stopped working for Medcenter, what knowledge did you have about Medcenter's contractual negotiations with pharmaceutical companies to provide online

marketing programs in Latin America?

62.     Did you ever share your knowledge about Medcenter's contractual negotiations with pharmaceutical companies with anyone at a WebMD company and, if so, with whom?

63.     While you were employed by Medcenter, did you have access to any Medcenter databases containing information about Latin American physicians?

64.     Did you ever provide Mariel Aristu with data or information from any Medcenter databases of Latin American physicians and, if so, what data or information did you provide to her and why did you provide it to her?

65.     When did you leave Medscape?

66.     Why did you leave Medscape?

**To:** Daniel Sanmarco[daniel.sanmarco@corp.medcenter.com]
**From:** Mariel Aristu[mariel.aristu@corp.medcenter.com]
**Sent on behalf of:** Mariel Aristu <mariel.aristu@corp.medcenter.com>
**Sent:** Thur 2/18/2016 8:51:54 AM Eastern Standard Time
**Subject:** Fwd: Print
**Attachment:** Print.png

---

Mariel Aristu
Vice President - Sales & Accounts Management
Medcenter
Phone + 5411 4795 5300 ext 103
Mobile + 54911 3469 0111
Mobile Brazil  +55119 9871 6428
www.medcentersolutions.com


Offices in the USA, Spain, Mexico, Brazil, Argentina and Colombia


This e-mail is meant only for the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.


---------- Mensaje reenviado ----------
De: **Estefania Aristu** <estefania.aristu@corp.medcenter.com>
Fecha: 18 de febrero de 2016, 10:51
Asunto: Print
Para: Mariel Aristu <mariel.aristu@corp.medcenter.com>



--
**Estefania Aristu**
*Account Manager*
Medcenter Solutions

Phone + 5411 4795-5300
Mobile +5411 34696963
Offices in the USA, Spain, Mexico, Brazil, Argentina and Colombia

Este mensaje tiene por destinatario exclusivo a la persona o entidad a la que está dirigida, y puede contener información confidencial y que no puede divulgarse. Si usted recibió este mensaje por error, le está prohibido divulgar, distribuir o copiar la información aquí contenida. Le agradeceremos que notifique del error inmediatamente por e-mail al remitente y que borre este mensaje de su sistema. Muchas gracias por su cooperación.



Case 1:20-cv-00502-ALC-OMG   Document 45-1   Filed 03/03/22   Page 21 of 36



## Estefania Aristu · 3rd
Digital Marketing Manager Latin America at BD
Argentina · Contact info

300+ connections

BD
Moviendo Futuro

[ Message ]  [ More ]

---

### Activity
1,234 followers

Estefania Aristu profile for · now

Ya sea organizando o asistiendo a algún tipo de reunión esta temporada navideña, el "Holiday Party Survival Guide" en nuestra BD™ Diabetes Care App, contiene consejos sobre cómo las personas que llevan un estilo de vida ...show more

Read the BD™ Diabetes Care App's "Holiday Party Survival Guide"
BD

Estefania Aristu commented on a post · 1mo
Felicitaciones Esgei!! 👏👏👏

21 comments

See all activity

---

### Experience

**Digital Marketing Manager Latin America**
BD · Full-time
Jul 2019 - Present · 2 yrs 6 mos
Argentina

Desarrollo y estrategia de planes de comunicación digitales en América Latina.
Desarrollo de habilidades digitales y entrenamiento a equipo de 80 lideres de Marketing en 4 pri ...see more

**Sales & Marketing Manager**
Suizo Argentina · Full-time
Sep 2017 - Jun 2019 · 1 yr 10 mos
Argentina

Gestionar, negociar y coordinar acuerdos exclusivos con principales
proveedores (pharma y non pharma) que genere mayor volume ...see more

**Strategic Sales Manager Latin America**
Medscape · Full-time
Apr 2016 - Sep 2017 · 1 yr 6 mos
Argentina

Desarrollo y diseño de planes digitales para el alcance de los objetivos
promocionales o de educación médica de las principales compañías
farmacéuticas.
Analisis del comportamiento de la audiencia, canales y tácticas, Experiencia
en proyectos que incluyen estrategias SEO, SEM, e-mail marketing, webinars, social listening, sitios web,
Clientes: Abbive, Abbott, Allergan, Amgen, AstraZeneca, Boehringer
Ingelheim, Janssen,Clag, Eli-Lilly, MSD, Novartis, NovoNordisk, Roche, Bayer

**Medcenter Solutions**

**Account Manager Argentina & Brasil**
Jan 2012 - Apr 2016 · 4 yrs 4 mos
Brasil

Desarrollo y diseño de planes digitales para el alcance de los objetivos
promocionales o de educación médica de las principales compañías
farmacéuticas.
Analisis del comportamiento de la audiencia, canales y tácticas, Experiencia
en proyectos que incluyen estrategias SEO, SEM, e-mail marketing, webinars, social listening, sitios web,
Clientes: Abbive, Abbott, Allergan, Amgen, AstraZeneca, Boehringer
Ingelheim, Janssen,Clag, Eli-Lilly, MSD, Novartis, NovoNordisk, Roche, Bayer

**Project Manager**
Full-time
May 2010 - Jan 2012 · 1 yr 9 mos
Argentina

Desarrollo de material promocional y educativo que refuerce el posicionamiento de diferentes productos.
Gestión de acciones digitales y presenciales que acompañen la imagen del producto y del laboratorio.
Implementación, administración y coordinación de programas a pacientes que incluyen entrega de
medicación.
Análisis del comportamiento y ánálisis de los diferentes programas con los resultados obtenidos y
acciones de
recomendación para el incremento de participación y generación de mayor impacto en las acciones
ejecutadas.
Desarrollo e implementación de campañas de lanzamiento de productos, coberturas y participación en eventos
científicos (congresos médicos nacionales e internacionales).

**Account Coordinator**
Mar 2007 - May 2010 · 3 yrs 3 mos
Argentina

Gestión e implementación de campañas de promoción y educación médica científica.
Implementación de campañas de investigación de Mercado locales y regionales. Recolección de información y
Desarrollo de reportes con los resultados de los análisis.
Control y monitoreo de proyectos a través del CRM de la compañía (Salesforce).

---

### Education

**Moviendo Futuro**
Coaching Ontológico Profesional, Management, Neurociencias, Psicología Organizacional e Inteligencia
Emocional
Mar 2020 - Dec 2021

Programa Ejecutivo de Marketing Online Avanzado, Marketing
Aug 2015 - Nov 2015

**Universidad de Ciencias Empresariales y Sociales**
Licenciatura en Marketing
2002 - 2012

See all 5 education

---

### Skills

**Email Marketing** · 14
Endorsed by 6 colleagues at Medcenter Solutions

**Marketing** · 5
Endorsed by 3 colleagues at Medcenter Solutions

**Digital Marketing** · 7
Endorsed by 3 colleagues at Medcenter Solutions

See all 20 skills

---

### Recommendations
Received   Given

**Maria José Rossaro** · 3rd
Gerente de Marketing Digital en Grupo Werthein
September 21, 2017, Maria José was senior to Estefania but didn't manage Estefania directly

He trabajo con Estefania varios años, y la he visto crecer profesionalmente.
Ha desempeñado diferentes tareas y ha tenido diversas responsabilidades y ante todas ellas demostró una
gran capacidad de aprendizaje. Se ha desempeñado perfectamente en su trabajo diario, siendo detallista,
responsable y proactiva.

**Daniel Sanmarco** · 3rd
CEO en Medcenter Solutions
August 21, 2011, Daniel managed Estefania directly

Estefania is one of the best young professionals I have seen in my career. Her plasticity and dedication, make
her an extraordinary helpful resource. She is always anticipating any possible need or difficulty and coming up
with the smartest and simpler solution. I definitively recommend Estefania.

---

### Courses

**EJECUTIVO DE MARKETING ONLINE AVANZADO**
Universidad de Buenos Air

---

### Languages

**English**
Native or bilingual proficiency

**Portuguese**
Full professional proficiency

**Spanish**
Native or bilingual proficiency

---

### Interests
Influencers   Companies   Groups   Schools

**Daniel Goleman** · 3rd
Host of First Person Plural Emotional
Intelligence and Beyond
52 followers

---

**Linkedin**

About
Community Guidelines
Privacy & Terms
Sales Solutions
Safety Center

Accessibility
Careers
Ad Choice
Mobile

Talent Solutions
Marketing Solutions
Advertising
Small Business

Questions?
Visit our Help Center

Manage your account and privacy
Go to your Settings

LinkedIn Corporation © 2021

<u>ATTACHMENT D</u>

The witness may refuse to answer any question as to which she has a privilege not to answer under United States law. Under US law, a witness has a privilege not to answer a question if the answer would require the witness to disclose a communication between the witness and his or her lawyer, which was intended to be and was in fact kept confidential, made for the purpose of obtaining or providing legal advice.  A witness also has a privilege not to answer a question if the answer might incriminate the witness under United States law, but the privilege does not extend to questions whose answer might incriminate the witness under the law of another country.

<u>ATTACHMENT E</u>

The Protective Order is attached.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEDCENTER HOLDINGS INC., MEDCENTER SOLUTIONS SA, MED SOLUTIONS MÉXICO, S. DE R.L. DE C.V. AND MEDCENTER SOLUTIONS DO BRASIL SA,<br><br>Plaintiffs,<br><br>-against-<br><br>WEBMD HEALTH CORP., MEDSCAPE, LLC, AND WEBMD GLOBAL LLC,<br><br>Defendants. | 1:20 Civ. 00053 (ALC) (GWG)<br><br>**STIPULATED PROTECTIVE ORDER GOVERNING THE PRODUCTION AND EXCHANGE OF CONFIDENTIAL INFORMATION** |

WHEREAS this matter has come before the Court, by stipulation of the parties, for the entry of a protective order pursuant to Fed. R. Civ. P. 26(c), limiting the review, copying, dissemination and filing of confidential and/or proprietary documents and information to be produced by any party and their respective counsel or by any non-party in the course of discovery in this matter to the extent set forth below; and the parties, by, between and among their respective counsel, having stipulated and agreed to the terms set forth herein, and good cause having been shown;

IT IS hereby ORDERED that:

1.      This Stipulated Protective Order Governing the Production and Exchange of Confidential Information ("Protective Order") shall govern the handling of documents, electronically stored information, testimony and all other information produced by or between the parties to the above-captioned action ("Action") or by third parties in connection with the Action (whether formal or informal), and all information provided, submitted, or exhibited by the

parties hereto or third parties in connection with any evidentiary hearings or other proceedings conducted during the course of the Action.

    2.      As used herein:

        (a)    "Confidential Information" shall mean information that the producing party reasonably and in good faith believes comprises or contains non-public confidential or commercially sensitive technical, sales, marketing, business, financial or personal information; or information that the producing party is under a legal obligation to maintain as confidential.

        (b)    "Outside Attorneys' Eyes Only Information" shall mean information that the producing party reasonably and in good faith believes comprises or contains competitively sensitive information that could be used by a competitor to obtain a business advantage over the producing party, including, but not limited to, trade secrets and personal customer and client information.

        (c)    "Protected Data" shall mean any information that a party believes in good faith to be subject to federal, state, or foreign data protection laws or other privacy obligations or protections. Protected Data constitutes highly sensitive materials requiring special protection. Protected Data may be redacted by the Producing Party and subject to challenge by the Receiving Party as set forth in paragraph 9.

        (d)    "Producing Party" shall mean the parties to this action and any third-parties producing "Confidential Information", "Protected Data" or "Outside Attorneys' Eyes Only Information" in connection with depositions, document production, or otherwise, or the party asserting the confidentiality privilege.

2

(e)     "Receiving Party" shall mean the party to this action and/or any non-party receiving "Confidential Information", "Protected Data" or "Outside Attorneys' Eyes Only Information" in connection with depositions, document production, or otherwise.

3.     Any party, subpoenaed non-party, or other third party whose information may be disclosed in connection with this Action may designate documents produced, testimony given, or other information exchanged in connection with this Action as "Confidential," "Protected Data," or "Outside Attorneys' Eyes Only Information" either by notation on the document, statement on the record of the deposition, designation pursuant to this Order, or written advice to the counsel for the parties.   Electronic documents and information, if any, shall be designated as "Confidential," "Protected Data," or "Outside Attorneys' Eyes Only Information" by any of the foregoing methods or pursuant to a procedure to be agreed upon by the parties.

4.     All Confidential Information, Protected Data, and Outside Attorneys' Eyes Only Information shall be used solely for the purpose of this Action. No person receiving such Confidential Information or Protected Data shall, directly or indirectly, use, transfer, disclose, or communicate in any way the Confidential Information or Protected Data to any person not subject to this Order, as described in paragraph 5. Any other use or disclosure is prohibited.  The receipt of Confidential Information by persons or entities as defined in paragraph 5(e) below shall not prevent such person or entity from serving as an expert or consultant in connection with the Action. No person receiving such Outside Attorneys' Eyes Only Information shall, directly or indirectly, use, transfer, disclose, or communicate in any way the Outside Attorneys' Eyes Only Information to any person not subject to this Order, as described in paragraph 6. Any other use or disclosure is prohibited.

3

1" = "1" "HF 13823981v.2" ""

5.      Except with the prior written consent of the Producing Party or by order of the

Court, Confidential Information or Protected Data shall not be furnished, shown or disclosed to

any person or entity except to:

(a)    the parties in this action, including employees of the parties who are directly
        assisting in this Action;

(b)    counsel for the parties to this Action and their associated attorneys, paralegals and
        other professional personnel (including support staff) who are directly assisting
        such counsel in the preparation of this Action for trial or other proceeding herein,
        and are under the supervision or control of such counsel;

(c)    copying, imaging, computer services and/or litigation support services who are
        bound to protect Confidential Information or Protected Data, provided, however,
        that such Confidential Information or Protected Data is furnished, shown or
        disclosed in accordance with the procedures set forth in paragraph 7 herein;

(d)    any agreed-upon or ordered mediator and that mediator's personnel, provided,
        however, that such Confidential Information or Protected Data is furnished,
        shown or disclosed in accordance with the procedures set forth in paragraph 7
        herein;

(e)    expert witnesses or consultants retained by the parties or their counsel to furnish
        technical or expert opinions, services, or assistance in connection with this Action
        or to give testimony with respect to the subject matter of this Action at the trial of
        this action or other proceeding herein, provided, however, that such Confidential
        Information or Protected Data is furnished, shown or disclosed in accordance with
        the procedures set forth in paragraph 7 herein;

(f)    the Court and court personnel, provided that the Confidential Information or
        Protected Data is filed in accordance with paragraph 11 herein or otherwise
        disclosed in accordance with paragraph 12 herein;

(g)    an officer before whom a deposition is taken, including stenographic reporters and
        videographers and any necessary secretarial, clerical or other personnel of such
        officer;

(h)    trial and deposition witnesses, provided that the Confidential Information or
        Protected Data is furnished, shown or disclosed in accordance with paragraphs 7
        or 11; and

(i)    any other person agreed to by the parties.

4

6.   Except with the prior written consent of the Producing Party or by order of the Court, Outside Attorneys' Eyes Only Information shall not be furnished, shown or disclosed to any person or entity except to:

(a)   outside counsel for the parties to this Action and their associated attorneys, paralegals and other professional personnel (including support staff) who are directly assisting such counsel in the preparation of this Action for trial or other proceeding herein, and are under the supervision or control of such counsel;

(b)   copying, imaging, computer services and/or litigation support services who are bound to protect Outside Attorneys' Eyes Only Information, provided, however, that such Outside Attorneys' Eyes Only Information is furnished, shown or disclosed in accordance with the procedures set forth in paragraph 7 herein;

(c)   any agreed-upon or ordered mediator and that mediator's personnel, provided, however, that such Outside Attorneys' Eyes Only Information is furnished, shown or disclosed in accordance with the procedures set forth in paragraph 7 herein;

(d)   expert witnesses or consultants retained by the parties or their counsel to furnish technical or expert opinions, services, or assistance in connection with this Action or to give testimony with respect to the subject matter of this Action at the trial of this action or other proceeding herein, provided, however, that such Outside Attorneys' Eyes Only Information is furnished, shown or disclosed in accordance with the procedures set forth in paragraph 7 herein;

(e)   the Court and court personnel, provided that the Outside Attorneys' Eyes Only Information is filed in accordance with paragraph 11 herein or otherwise disclosed in accordance with paragraph 12 herein;

(f)   an officer before whom a deposition is taken, including stenographic reporters and videographers and any necessary secretarial, clerical or other personnel of such officer;

(g)   any other person agreed to by the parties.

7.   Before any disclosure of Confidential Information, Protected Data, or Outside Attorneys' Eyes Only Information is made to any person pursuant to paragraphs 5(c), (d) or (e), or 6(b), (c), or (d) herein, such person must execute a confidentiality agreement in the form of Exhibit A attached hereto.  Counsel shall maintain the executed confidentiality agreements required by this Protective Order.

5

8. Any document or information that may contain Confidential Information, Protected Data, or Outside Attorneys' Eyes Only Information that has been inadvertently produced without identification as to its confidential nature may be so designated by the Producing Party by written notice to counsel for the Receiving Parties identifying the document or information as "Confidential," "Protected Data," or "Outside Attorneys' Eyes Only" within a reasonable time following discovery that the document or information has been produced without such designation. Any party receiving such improperly designated documents shall use its best efforts to retrieve such documents from persons not entitled to receive those documents.

9. With respect to objections to designations of documents and information as "Confidential," "Protected Data," or "Outside Attorneys' Eyes Only," a party shall not be obligated to challenge the propriety of a designation as "Confidential," "Protected Data," or "Outside Attorneys' Eyes Only" at the time made, and a failure to do so shall not preclude a subsequent challenge thereto. In the event that any dispute arises concerning this Order, the parties shall first try to resolve such dispute in good faith on an informal basis. If the dispute cannot be resolved, the parties may seek appropriate relief from the Court on an expedited schedule to be established by the Court. Pending the resolution of such motion by the Court and any subsequent appeal therefrom, the parties agree to treat the information that is the subject of the motion in accordance with the Producing Party's designation. The Producing Party shall at all times carry the initial burden of establishing that the contested information merits a "Confidential," "Protected Data," or "Outside Attorneys' Eyes Only" designation.

10. All depositions (if any), the information disclosed therein, and the transcripts thereof shall presumptively be treated as Confidential Information, Protected Data, and Outside Attorneys' Eyes Only Information and subject to this Protective Order during the deposition and

6

for a period of thirty (30) days after a transcript of said deposition is received by counsel for each of the parties. At or before the end of such thirty-day period, the deposition shall be classified appropriately by notifying all of the parties in writing of the specific pages and lines of the transcript that should be treated as Confidential Information, Protected Data, or Outside Attorneys' Eyes Only Information thereafter.

11.     A Receiving Party who seeks to file with the Court any document that contains information previously designated as comprising or containing Confidential Information, Protected Data, or Outside Attorneys' Eyes Only Information shall follow the procedures of this Court for filing documents conditionally under seal. The party who designated the documents "Confidential," "Protected Data," or "Outside Attorneys' Eyes Only" will have the obligation to file a motion to permanently seal the documents pursuant to applicable rules.

12.     Should the need arise for any of the parties to disclose Confidential Information, Protected Data, or Outside Attorneys' Eyes Only Information during any hearing or trial before the Court, including through argument or the presentation of evidence, such party may do so only after taking such steps as the Court, upon motion of the disclosing party, shall deem necessary to preserve the confidentiality of such Confidential Information, Protected Data, or Outside Attorneys' Eyes Only Information.

13.     A party may designate as Confidential Information, Protected Data, or Outside Attorneys' Eyes Only Information subject to this Protective Order any document, information, or deposition testimony produced or given by any non-party to this case, or any portion thereof, where such information has not already been designated as "Confidential," "Protected Data," or "Outside Attorneys' Eyes Only" by the non-party.

1" = "1" "HF 13823981v.2" ""

14.     In the event that the Receiving Party is requested or required by law to disclose any Confidential Information, Protected Data, or Outside Attorneys' Eyes Only Information in another action or proceeding, the Receiving Party shall provide the Producing Party with prompt written notice of any such request or requirement so that the Producing Party may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Protective Order, provided, however, that nothing in this Protective Order shall be interpreted to obligate the Receiving Party to seek such a protective order or other remedy. Unless the Producing Party waives the protections of this Protective Order, the Receiving Party will not disclose any Confidential Information, Protected Data, or Outside Attorneys' Eyes Only Information except pursuant to the order of a court of competent jurisdiction directing the disclosure of such Confidential Information, Protected Data, or Outside Attorneys' Eyes Only Information.

15.     In the event anyone shall violate or threaten to violate any terms of this Protective Order, the aggrieved party may immediately apply to the Court to obtain relief, including, without limitation, injunctive relief against such person.  The existence, if any, of an adequate remedy at law shall not preclude the applying party from obtaining such relief.

16.     This Protective Order shall continue to be binding after the conclusion of this litigation except (a) that there shall be no restriction on documents that are used as exhibits in Court (unless such exhibits were filed under seal); and (b) that a party may seek the written permission of the Producing Party or further order of the Court with respect to dissolution or modification of any provision of the Protective Order. The Court expressly retains jurisdiction over this Action for enforcement of the provisions of this Protective Order following the final resolution of the Action.

1" = "1" "HF 13823981v.2" ""

17.     Nothing herein shall be deemed to waive any privilege recognized by law, or shall be deemed an admission as to the admissibility in evidence of any facts or documents revealed in the course of disclosure.

18.     Consistent with Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502, in the event a Producing Party inadvertently discloses information subject to the attorney-client privilege, attorney work product doctrine, or other applicable privilege or immunity, the disclosure of the inadvertently disclosed information shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the inadvertently disclosed information and its subject matter.  Where it appears on its face that the information was inadvertently disclosed, or the Producing Party informs the Receiving Party that privileged information has been disclosed, the Receiving Party (i) must promptly return or destroy the specified information and any copies thereof, (ii) must not use or disclose the information until the claim is resolved, (iii) must take reasonable steps to retrieve any such information that was disclosed or distributed before the Receiving Party was notified and prevent any further dissemination of the information, and (iv) may promptly present the information to the Court under seal for a determination of the claim.  The Producing Party must preserve the information until the claim is resolved.

19.     Within sixty (60) days after entry of an order, judgment or decree finally disposing of this Action, all Confidential Information, Protected Data, or Outside Attorneys' Eyes Only Information produced or designated and all reproductions thereof shall be destroyed. Upon the request of the another party in this Action, a party shall certify in writing that it has undertaken its best efforts to destroy such physical objects and documents, and that such

9

physical objects and documents have been destroyed to the best of its knowledge. Notwithstanding anything to the contrary, counsel of record for the parties may retain in a secure manner all pleadings, motion papers, discovery responses, deposition transcripts, deposition and trial exhibits, legal memoranda, correspondence, work product and attorney-client communications that include or are derived from Confidential Information, Protected Data, or Outside Attorneys' Eyes Only Information.

20.    This Protective Order is entered into without prejudice to the right of either party to seek relief from, or modification of, this Protective Order or any provisions thereof by properly noticed motion to the Court or to challenge any designation of "Confidential," "Protected Data," or "Outside Attorneys' Eyes Only" as inappropriate under applicable law.

21.    This Protective Order may be changed by further order of this Court, and is without prejudice to the rights of a party to move for relief from any of its provisions, or to seek or agree to different or additional protection for any particular material or information.

22.    When serving any subpoena in this Action on a non-party to the Action, a copy of this Protective Order shall be included with the subpoena.

23.    This Protective Order shall be binding upon any future party to the Action.

24.    This Protective Order may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same document.

Dated: New York, New York          Respectfully submitted,
       May 20 , 2021


_____          _____
BARRY WERBIN                     JEFFREY A. MITCHELL
LAWRENCE M. KAYE                 STEPHEN P. FARRELLY

10

1" = "1" "HF 13823981v.2" ""

GABRIELLE C. WILSON
HERRICK, FEINSTEIN LLP
2 Park Ave.
New York, NY 10016
bwerbin@herrick.com
lkaye@herrick.com
gwilson@herrick.com

Tel. (212) 592-1400

*Counsel to Plaintiffs*

BROWNE GEORGE ROSS O'BRIEN
ANNAGUEY & ELLIS LLP
5 Penn Plaza, 24th Floor
New York, NY 10001
jmitchell@bgrfirm.com
sfarrelly@bgrfirm.com

Tel. (212) 413-2600

*Counsel to Defendants*

Dated:   May 21, 2021

SO ORDERED:

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

11

EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MEDCENTER HOLDINGS INC., MEDCENTER SOLUTIONS SA, MED SOLUTIONS MÉXICO, S. DE R.L. DE C.V. AND MEDCENTER SOLUTIONS DO BRASIL SA,<br><br>        Plaintiffs,<br><br>    -against-<br><br><br>WEBMD HEALTH CORP., MEDSCAPE, LLC, AND WEBMD GLOBAL LLC,<br><br>        Defendants. | 1:20 Civ. 00053 (ALC) (GWG)<br><br>**AGREEMENT TO PROTECT CONFIDENTIAL INFORMATION** |

I, _____, state that:

1.     My address is_____.

2.     My present employer is _____.

3.     My present occupation or job description is _____

_____.

4.     I have received a copy of the Stipulated Protective Order Governing the Production and Exchange of Confidential Information (the "**Protective Order**") entered in the above-entitled action.

5.     I have carefully read and understand the provisions of the Protective Order.

6.     I will comply with and agree to be bound by all of the provisions of the Protective Order.

7.     I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action, any Confidential Information,

1" = "1" "HF 13823981v.2" ""

Protected Data, or Outside Attorneys' Eyes Only Information that is disclosed to me.

8.      I will return all Confidential Information, Protected Data, and Outside Attorneys' Eyes Only Information that comes into my possession, and documents or things that I have prepared relating thereto, to counsel for the party by whom I am employed or retained, or to counsel from whom I received the Confidential Information, Protected Data, or Outside Attorneys' Eyes Only Information.

9.      I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.


Executed on _____           _____
                    (Date)                                     (Signature)