UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MEDCENTER HOLDINGS INC., et al.,                :

        Plaintiffs,                :  OPINION AND ORDER
                                                             20 Civ. 53 (ALC) (GWG)
    -v.-                 :

WEB MD HEALTH CORP., et al.,                     :

        Defendants.                :
                                                                          :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Plaintiffs Medcenter Holdings Inc., Medcenter Solutions SA, Med Solutions Mexico, S. de R.L. de C.V., and Medcenter Solutions do Brasil SA, (collectively, "Medcenter"), have brought suit against defendants WebMD Health Corp. ("WebMD"), Medscape, LLC ("Medscape"), and WebMD Global LLC for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq. and New York state common law, and against defendant WebMD for breach of contract. See Complaint, filed Jan. 3, 2020 (Docket # 1) ("Comp."); First Amended Complaint, filed June 5, 2020 (Docket # 18) ("Am. Comp."). On September 14, 2023, the Court issued an opinion and order on defendants' motion for sanctions on account of spoliation of evidence. See Medcenter Holdings Inc. v. Web MD Health Corp., 2023 WL 5963616 (S.D.N.Y. Sept. 14, 2023). Defendants have moved for reconsideration of that ruling.[1] For the following reasons, defendants' motion is granted to the extent stated below.

---

[1] See Defendants' Notice of Motion for Reconsideration, filed Sept. 27, 2023 (Docket # 98) ("Mot."); Memorandum of Law in Support, filed Sept. 27, 2023 (Docket # 99) ("Mem."); Plaintiffs' Memorandum of Law in Opposition, filed Oct. 16, 2023 (Docket # 104) ("Opp."); Reply Memorandum of Law in Further Support, filed Oct. 23, 2023 (Docket # 105) ("Reply"); Supplemental Declaration of Jeffrey A. Mitchell, filed Mar. 11, 2024 (Docket # 122) ("Mitchell Decl."); Supplemental Memorandum of Law in Further Support, filed Mar. 11, 2024 (Docket # 123) ("Supp. Mem."); Plaintiffs' Supplemental Memorandum of Law in Opposition, filed Apr. 9, 2024 (Docket # 125) ("Supp. Opp."); Supplemental Declaration of Barry Werbin, filed Apr 9,

I. <u>LEGAL STANDARD</u>

Motions for reconsideration are governed by Local Civil Rule 6.3, which provides that the moving party shall set forth "the matters or controlling decisions which counsel believes the Court has overlooked." Thus, a motion to reconsider is generally denied "unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995) (citation omitted). "The standard for granting a motion for reconsideration is strict," <u>RCC Ventures, LLC v. Brandtone Holdings Ltd.</u>, 322 F.R.D. 442, 445 (S.D.N.Y. 2017), and therefore such a motion "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple," <u>Analytical Surveys, Inc. v. Tonga Partners, L.P.</u>, 684 F.3d 36, 52 (2d Cir. 2012) (punctuation omitted); <u>accord</u> <u>Ortega v. Mutt</u>, 2017 WL 1968296, at *1 (S.D.N.Y. May 11, 2017) ("Reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly.") (quotation marks and citation omitted). The Second Circuit has held that "[a] motion for reconsideration should be granted only when the [moving party] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" <u>Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.</u>, 729 F.3d 99, 104 (2d Cir. 2013) (quoting <u>Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.</u>, 956 F.2d 1245, 1255 (2d Cir. 1992)).

Further, a party is "barred from making for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed but chose

---

2024 (Docket # 126) ("Werbin Decl."); Reply Supplemental Memorandum of Law in Further Support, filed Apr. 24, 2024 (Docket # 127) ("Supp. Reply").

not to do so." City of Austin Police Ret. Sys. v. Kinross Gold Corp., 957 F. Supp. 2d 277, 315 (S.D.N.Y. 2013) (quotation marks and citation omitted). In other words, "'a party may not advance new facts, issues or arguments not previously presented to the Court' on a motion for reconsideration." Steinberg v. Elkman, 2016 WL 1604764, at *1 (S.D.N.Y. Apr. 6, 2016) (quoting Nat'l Union Fire Ins. Co. v. Stroh Cos., 265 F.3d 97, 115 (2d Cir. 2001)); accord Sigmon v. Goldman Sachs Mortg. Co., 229 F. Supp. 3d 254, 257 (S.D.N.Y. 2017).

Additionally, the rule permitting reconsideration must be "narrowly construed and strictly applied so as to avoid duplicative rulings on previously considered issues." Merced Irrigation Dist. v. Barclays Bank PLC, 178 F. Supp. 3d 181, 183 (S.D.N.Y. 2016) (punctuation omitted). A narrow application of the rule not only "helps 'to ensure the finality of decisions,'" but also "prevent[s] the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Henderson v. Metro. Bank & Tr. Co., 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007) (quoting Naiman v. New York Univ. Hosps. Ctr., 2005 WL 926904, at *1 (S.D.N.Y. Apr. 21, 2005)).

II. DISCUSSION

Defendants argue that the Court's earlier opinion was incorrect in two respects. First, defendants argue that the Court incorrectly concluded that Medcenter had taken reasonable steps to preserve evidence contained in its "Salesforce Database." See Mot. at 1; Supp. Mem. at 1. Second, defendants argue that the Court incorrectly found that Medcenter's duty to preserve began in early 2017. See Mot. at 1. We will address each of the bases for reconsideration separately.

    A. Salesforce Data

        1. The Court's Earlier Decision

As described in the earlier decision, the Salesforce Database contained important information that Medcenter's former executive, Mariel Aristu, allegedly misappropriated following her departure from Medcenter to work for defendants. See Medcenter Holdings Inc., 2023 WL 5963616, at *2. According to Medcenter, following Aristu's departure, an IT administrator named Carlos Padilla conducted an investigation in early 2017 of Aristu's activity on the Salesforce Database. Id. at *8. The investigation involved Padilla using "10 screens" to analyze different Salesforce data, including various "reports" generated in Salesforce. See Declaration of Carlos Jose Francisco Padilla, filed Mar. 31, 2023 (Docket # 82) ("Padilla Decl."), ¶¶ 14-15. According to Padilla, this analysis revealed "unusual" activity by Aristu, suggesting she "improperly access[ed] the Salesforce Database, enabling her to view its data and thus to unlawfully steal trade secrets from Medcenter." Medcenter Holdings Inc., 2023 WL 5963616, at *9.

The earlier decision found that, while Medcenter allowed its Salesforce subscription to lapse by the end of 2018, Medcenter had "downloaded all of the information" and preserved it in "table files," which could be viewed in applications such as Microsoft Excel (hereinafter, "Spreadsheet Backup"). Id. at *9. The Court found that Medcenter had thus taken reasonable steps to preserve this data and that no spoliation sanctions were warranted. Id. at *14-15. The basis for this finding was the Court's belief that the defendants could use a column in the Spreadsheet Backup, named "last modified," to see the "unusual" activity Padilla had uncovered in his investigation. Id. at *15. The Court reasoned:

> One critical issue in this case is which employees accessed the Salesforce Database and on what dates. Padilla has explained how reading a column labeled "last modified" in an exhibit from Medcenter's production, along with the associated user ID, shows who accessed a particular Salesforce record and when it was accessed. Indeed, defendants have already used such evidence to raise a suggestion that Medcenter altered a record after Mariel Aristu's departure.

4

Id. (internal citations omitted).

Following the Court's decision, defendants filed the instant motion for reconsideration. As to the Salesforce Database, defendants argued that they could not in fact use the Spreadsheet Backup to observe the "unusual" activity Padilla uncovered in his investigation. See Mem. at 6. The Court held oral argument on February 8, 2024, see Transcript, filed Feb. 12, 2024 (Docket # 116), and counsel for Medcenter indicated that they were unsure whether this "unusual" activity could be observed in the Spreadsheet Backup, see id. at 42-44. Following oral argument, Medcenter confirmed that evidence of the "several abnormalities" uncovered by Padilla in his 2017 investigation "cannot be recreated from the Salesforce backup data that was produced." Email, annexed as Ex. B to Supp. Mitchell Decl. (Docket # 122-2); see Letter, filed Feb. 22, 2024 (Docket # 118). In light of this development, the Court ordered the parties to provide supplemental briefing on the effect of this concession. See Order, filed Feb. 27, 2024 (Docket # 120) ("Feb. 27 Order"). The Court also noted that its "review of the record on the original motion and on the reconsideration motion [had] already persuaded it that there was no 'intent to deprive' defendants of the ESI," and thus, any sanctions would be under Fed. R. Civ. P. 37(e)(1), rather than Fed. R. Civ. P. 37(e)(2). Id.

   2. Appropriate Sanctions

In light of the Court's misapprehension of the information that could be observed in the Spreadsheet Backup, the Court grants defendants' motion for reconsideration on this point inasmuch as this factual issue was a matter the Court had "overlooked" in its earlier decision. See Local Civil Rule 6.3.

Upon reconsideration, the Court finds that sanctions are appropriate under Fed. R. Civ. P. 37(e)(1) because Medcenter "failed to take reasonable steps to preserve" the ESI and does not

5

argue now that such evidence can "be restored or replaced through additional discovery." See Fed. R. Civ. P. 37(e).

On the issue of failure to take reasonable steps, the Court concludes that Medcenter was required to take reasonable steps to preserve the Salesforce Database to the extent the database supported or did not support the conclusion that Aristu had improperly accessed it. This evidence was absolutely critical to Medcenter's claim in this case that Aristu had misappropriated trade secrets. Thus, at the time it decided not to renew its Salesforce license in 2018, long after Padilla's investigation, Medcenter had a duty to preserve evidence that showed that Aristu had improperly accessed it. If Medcenter could not afford to preserve the database in its entirety, it was required to take steps to preserve the critical evidence of Aristu's alleged theft — even if this meant re-running the analysis on "10 screens," see Padilla Decl. ¶ 15, and taking screenshots or other steps to preserve that evidence. These actions would have been the minimum "reasonable step[s]" Medcenter needed to take to "preserve [the evidence] at the time it was destroyed." Chin, 685 F.3d at 162; see EBIN New York, Inc. v. SIC Enter., Inc., 2022 WL 4451001, at *9 (E.D.N.Y. Sept. 23, 2022) (failing "to save or create copies of [ ] messages" hosted on a platform that does not retain copies longer than six months is unreasonable).[2]

In light of this ruling, footnote 4 of the Court's previous decision is no longer applicable. See Medcenter Holdings Inc., 2023 WL 5963616, at *15 n.4. In other words, once Padilla found

---

[2] We reject, however, the notion that the failure to re-run Padilla's analysis or to duplicate other aspects of the investigation (or preserve them at the time) reflected an "intent to deprive" defendants of evidence, as defendants seem to argue. See Supp. Mem. at 12 n.7. Given there is no other evidence of an intent to deprive, this fact alone does not meet the high burden of showing such intent by "clear and convincing evidence." See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., 341 F.R.D. 474, 496 (S.D.N.Y. 2022) (collecting cases); Fed. R. Civ. P. 37(e)(2).

evidence that there had been misappropriation of trade secrets, there was in fact a duty to preserve this evidence within some reasonable period thereafter.[3]

We next turn to the issue of whether defendants have shown prejudice from the loss. Fed. R. Civ. P. 37(e)(1) provides that the Court "upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice."

Here, defendants articulate two general ways they are prejudiced by the spoliation of the evidence in the Salesforce Database. First, defendants argue that they are unable to "test the accuracy of Padilla's vague memories about [the reports] from six years before his deposition." Mem. at 9; see Supp. Mem. at 8-9, 14-15. Second, defendants argue that they are unable to dispute the timing of the investigation or whether the "alleged Padilla investigation" even occurred. See Supp. Mem. at 12-13.[4] As to this latter point, defendants argue that this inability prejudices their statute of limitation defense because in the event the investigation happened earlier, or not at all, Medcenter's claims may fall outside of the statute of limitations period. See Mem. at 9; Reply at 6; Supp. Mem. at 13. We discuss the two types of prejudice separately.

---

[3] For what it is worth, we note that footnote 4 was an attempt to address a perceived argument that Padilla should have immediately preserved (for example, through taking screenshots of the "10 screens") the evidence that he used to determine Aristu's alleged malfeasance at the time he was doing his investigation. At the time of his investigation, however, Padilla had no reason to believe that the results of his investigation could not in the future be easily reproduced given Medcenter had full access to Salesforce and there was no apparent plan to discontinue it. Thus, as footnote 4 stated, there was no duty to preserve his analysis "at the very moment the investigation occurred." Medcenter Holdings Inc., 2023 WL 5963616, at *15 n.4.

[4] Our reference to a "Padilla investigation" is not meant to constitute a finding that such an investigation necessarily took place. We thus do not refer to it, as defendants do, as the "alleged" Padilla investigation.

i. Preclusion Related to the Results of the Padilla Investigation

As to the prejudice stemming from defendants' inability to refute what Padilla allegedly found, see Supp. Mem. at 12, we agree that defendants are severely prejudiced by being unable to test the accuracy of Medcenter's claims about the investigation.

As a result, Medcenter must be precluded from offering any evidence relying on or derived from the data that has been lost in the Salesforce Database. Based on the parties' briefing, it appears that this consists of any aspect of the Padilla investigation using the Salesforce Database. As the Court had determined in its earlier decision related to the "Non-Contact Data," "it would be unfair to defendants to require them to counter evidence" as to the results of the investigation "if they have been placed in the position of not having any access to that data." Medcenter Holdings Inc., 2023 WL 5963616, at *13. The Court finds that this sanction is "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Finally, the Court notes that the sanction is limited to the Padilla investigation into Aristu's activity and does not necessarily include "any other Salesforce-based investigation," see Supp. Mem. at 11, as long as all data relevant to such an investigation has been preserved.[5]

---

[5] Defendants request that Medcenter be precluded from "relying upon or offering evidence in support of the allegations in the Amended Complaint that Aristu improperly accessed, downloaded or otherwise improperly used information stored on the Salesforce Database to the extent such allegations are based in any way on or rely upon the Alleged Padilla Investigation." Supp. Mem. at 4 (internal citations omitted). Our decision precluding Medcenter from offering evidence of the findings of the Padilla investigation certainly would apply to Medcenter offering such evidence to support allegations in the amended complaint. However, as Medcenter argues, this preclusion would not prevent Medcenter from presenting other evidence to support these allegations. See Supp. Opp. at 20-21. Indeed, defendants acknowledge this point. See Supp. Reply at 8 ("If Medcenter has other evidence, it is free to offer it . . . .").

> ii. Preclusion Related to the Timing or Existence of the Padilla Investigation

Much of the parties' briefing discusses the preclusion of evidence related to the existence and the timing of the Padilla investigation rather than preclusion of evidence about the substance or results of the investigation. This request presents a different issue from whether there should be preclusion as to the substance or results of the Padilla investigation itself. Defendants argue that their statute of limitations defense is prejudiced due to a lack of evidence concerning the timing of the Padilla investigation. However, defendants have failed to show that such prejudice resulted "from loss of the" ESI. Fed. R. Civ. P. 37(e)(1).

Essentially, defendants' argument rests on the assumption that the loss of the Salesforce Database means they are unable to determine when (or if) Padilla conducted his investigation and that as a result, defendants are forced to rely on "the say-so of self-interested witnesses Padilla and Sanmarco." Supp. Reply at 1 n.2. The timing of Padilla's investigation, defendants state, is critical to its statute of limitations defense since it could reveal when Medcenter was on notice of its misappropriation of trade secrets claim. See Supp. Mem. at 14; see also Universal Instruments Corp. v. Micro Sys. Eng'g, Inc., 924 F.3d 32, 50 (2d Cir. 2019) ("Accrual of the statute of limitations begins when a reasonably diligent person in plaintiff's position would have been put on inquiry as to the claim.") (citation and internal quotation marks omitted).

The problem with this argument is that had Medcenter preserved the reports utilized by Padilla in the course of his investigation by re-running them at some later time prior to the lapse of the Salesforce subscription, as defendants state Medcenter should have done, see Mem. at 1-2; Reply at 1, defendants would still lack evidence as to the date or nature of Padilla's original investigation.

9

This conclusion is illustrated by the sample of a report reproduced by defendants themselves in their reply brief, which provides an excerpt of an unrelated Salesforce report from 2018. See Supp. Reply at 4. Defendants observe that the report provides information on the creator and creation time of the report. Id. But the fact that a re-created report would have shown the date and author of the re-created report is of no help to defendants. Had Medcenter re-run the reports when it learned the database was to be shut down in 2018, the report would have shown the date and author only of the 2018 re-created report. It would not have shown whether any such reports had been run in "early 2017" as Medcenter claims.

To the extent defendants are arguing that Padilla should have created and preserved the "records" of his reports in "early 2017" for the purpose of showing the timing of the investigation, the Court rejects this argument. Certainly, the reports showing that Aristu had improperly accessed the database had to be preserved immediately or within a reasonable period because evidence of her improper access was obviously germane to a future lawsuit, which should have been apparent to Medcenter at the time. But the date that Medcenter discovered Aristu's wrongdoing was of no apparent importance in early 2017. This is because Medcenter had no reason to believe in early 2017 that the date of its discovery of Aristu's purportedly "unusual" activity in the Salesforce Database would be of any great significance. Of course, this information would have been significant if Medcenter had harbored a secret plan to wait three years to file suit and sought to conceal its true date of discovery to overcome any future statute of limitations defense. However, such conjecture is too far-fetched to form the basis of spoliation sanctions. To put the issue in terms of the elements of a spoliation claim, see Fed. R. Civ. P. 37(e), we have no evidence that Medcenter had reason to know that the date or the fact of the

investigation would be "relevant to future litigation," Fujitsu Ltd. v. Fed. Exp. Corp., 247 F.3d 423, 436 (2d Cir. 2001), at any time prior to its loss of the Salesforce Database.

Defendants complain that the Court's original decision "does not explain why the duty to preserve started only the moment after [the investigation] ended, and not the moment proof of wrongdoing was uncovered." Reply at 3. Again, the problem with defendants' argument is that it fails to separate two things: the duty to preserve evidence that is relevant to Medcenter's claims in this case and the duty to preserve evidence that is relevant to defendants' statute of limitations defense. As discussed, the Court is now convinced that Medcenter did not take reasonable steps to preserve the Salesforce Database because it did not preserve the data that would allow defendants to determine whether Aristu in fact did or did not access the database, which is directly relevant to Medcenter's claims. However, this ruling is entirely separate from the question of whether Medcenter had the duty to preserve evidence that is relevant to defendants' statute of limitations defense. The Court cannot find that Medcenter knew or "should have known" that the dates of Padilla's investigation "may be relevant to future litigation," Fujitsu Ltd., 247 F.3d at 436, because the dates of the Padilla investigation became an issue in this case only because Medcenter took a lengthy period of time to file suit. This is demonstrated by the fact that had Medcenter filed its lawsuit in 2018, the date of Padilla's investigation would have no bearing on any issue in this case. It would be wholly speculative for the Court to find that at the time of Padilla's investigation, Medcenter had "notice" or "should have known" that it would drag out the process of filing suit and therefore that the evidence of Padilla's investigation would be relevant to a statute of limitations defense.

Defendants argue that the Court's previous decision in Leidig v. Buzzfeed, Inc., 2017 WL 6512353, at *2 (S.D.N.Y. Dec. 19, 2017), justifies precluding Medcenter from mentioning

11

the existence or timing of the Padilla investigation. See Supp. Mem. at 15; Supp. Reply at 5. Setting aside the factual differences, the Court in Leidig precluded plaintiffs from using the date contained in various documents that were "modified or deleted" in discovery to prove the date the documents were created. Leidig, 2017 WL 6512353 at *13. Leidig addressed this finding in the context of prejudice to the defendant, not a duty to preserve. Here, by contrast, we do not find that there was a duty to preserve evidence as to the date of the Padilla investigation at any time in 2017 or 2018.

Defendants also argue that allowing Medcenter to introduce evidence of the existence or date of the Padilla investigation "would imply to a trier of fact that the investigation must have turned up something nefarious about Aristu." See Supp. Reply at 2. We do not think this to be necessarily the case. The burden of proving the statute of limitations defense will be on the defendants. See, e.g., Gonzalez v. Hasty, 651 F.3d 318, 322 (2d Cir. 2011); Overall v. Estate of Klotz, 52 F.3d 398, 403 (2d Cir. 1995). They will present their evidence that Medcenter knew about Aristu's misappropriation in 2016. In response, Medcenter may use Padilla's testimony to explain that they continued to investigate through January 2017 without describing the investigation's results. In these circumstances, a trier of fact would not need to make any findings or assumptions about what the investigation found. Medcenter would simply argue that the investigation continued as of early 2017 and that Medcenter was thus not on notice that the claim had accrued prior to this period. Furthermore, the Court finds it difficult to imagine that Medcenter will introduce evidence related to the investigation outside the context of the statute of limitations defense given it is precluded from offering evidence of the investigation's results.

* * *

In sum, Medcenter is precluded from offering any evidence relying on or derived from the data that has been lost in the Salesforce Database, including evidence relying on or derived from the results of the Padilla investigation's use of the Salesforce Database.[6]

B.  Date When the Duty to Preserve Arose

Defendants' second ground for reconsideration is that the Court incorrectly found that Medcenter's duty to preserve arose in "early 2017" following the Padilla investigation. See Medcenter Holdings Inc., 2023 WL 5963616, at *9. Defendants argue that this conclusion overlooked two important pieces of evidence suggesting the duty to preserve arose earlier. First, defendants argue that the 2016 corporate meeting minutes and the "November 11, 2016 email from Michael Fitzgerald to Mariel Aristu" show a specific awareness, as of mid- to late- 2016, by Medcenter that Aristu may have taken information from the Salesforce Database. Mem. at 10. Second, defendants argue that the Court did not properly account for Am. Comp. ¶ 134, which purportedly shows that "Medcenter's investigation was already underway in December 2016." Id. at 2. The Court addresses each of the arguments separately.

1.  Corporate Meeting Minutes and November 2016 Email

The core of defendants' argument is not that the Court "overlooked" evidence; rather, defendants argue that the evidence was "misunderstood." See Mem. at 10. The argument proceeds as follows: in the factual background section, the Court, in describing the Salesforce data, failed to cite to Am. Comp. ¶ 58 — which contains a more detailed description of the

---

[6] Defendants briefly argue that they should not be precluded themselves from offering evidence related to the results of the Padilla investigation. See Supp. Mem. at 18; Supp. Reply at 11-12. The Court is not making a ruling on this issue because it is outside the scope of the spoliation motion. As the Court explained in its earlier order, however, offering such evidence might "open the door for plaintiffs to offer evidence on the topic." Feb. 27 Order.

13

Salesforce data — and therefore did not understand that the corporate minutes and November 2016 email were in fact referring, albeit indirectly, to the Salesforce data. See Mem. at 10.

As an initial matter, while a misstatement or mischaracterization of a fact may suggest the Court "overlooked" relevant evidence, a failure to cite does not. See Trident International Limited v. American Steamship Owners Mutual Protection and Indemnity Association, Inc., 2008 WL 11517608, at *2 (S.D.N.Y. June 11, 2008) ("That some allegations were not specifically mentioned in the Court's Order is of no import; it would be impractical for a district court to enumerate every single fact and bit of minutiae it considers in reaching its conclusions."). Defendants point to nothing other than the omission of a citation to suggest that the Court did not fully understand the nature of the data contained in Salesforce. Such arguments are merely the re-litigation of issues already decided and thus do not provide a ground for reconsideration. See Analytical Surveys, Inc., 684 F.3d at 52; accord CVR Energy, Inc. v. Wachtell, Lipton, Rosen & Katz, 2019 WL 8165893, at *1 (S.D.N.Y. Oct. 9, 2019).

Turning to the substance of the corporate meeting minutes and the November 2016 email, the Court explained in both cases that the evidence did not specifically reference an awareness on the part of Medcenter that the Salesforce data was misappropriated; rather, the evidence suggested a more generalized fear that Aristu was exploiting "confidential information she was privy to in her role as a vice president at Medcenter Argentina." Medcenter Holdings Inc., 2023 WL 5963616, at *7; see id. ("There is no accusation within either set of minutes that Mariel Aristu stole all or part of [ ] either the Physicians or Salesforce Databases and provided them to WebMD."); id. at *8 ("Once again, these emails do not show by a preponderance of the evidence any specific awareness by Medcenter that Mariel Aristu had taken trade secrets in the form of data from the Salesforce and Physicians Databases. Instead, they appear to address . . . the duties

14

Medcenter contended Mariel Aristu owed Medcenter as someone who held various high-ranking roles within the Medcenter companies."). The Court concluded that "defendants ha[d] [not] met their burden of proving that Medcenter harbored any belief at this time that Mariel Aristu had shared data from the Salesforce Database (or the Physicians Database) with defendants or that it should have harbored such a belief." Id. at *7.

Defendants argue that the discussion in the corporate minutes and November 2016 email reflected concern over confidential information contained in the Salesforce Database rather than with information "provided to WebMD as part of the diligence materials protected by the [non-disclosure agreement]." See Mem. at 11. Indeed, the Court acknowledged as much. See Medcenter Holdings Inc., 2023 WL 5963616, at *7 ("[T]he minutes reflect an apprehension about Mariel Aristu's exploitation of confidential information she was privy to in her role as a vice president at Medcenter Argentina (including information about clients from the Salesforce Database) . . . .") (emphasis added). However, as just discussed, while the evidence appears to reflect a general concern about Aristu sharing information "she was privy to in her role as a vice president at Medcenter Argentina," we cannot find that either piece of evidence reflects an awareness by Medcenter "that Mariel Aristu had shared data from the Salesforce Database." Id. at *7. Thus, defendants' argument fails to provide a basis to reconsider the Court's earlier ruling on this point.

### 2. Paragraph 134 of the Amended Complaint

Paragraph 134 provides:

> As Medcenter later learned <u>during the period from in or about December 2016 through the first half of 2017</u>, Aristu had in fact created multiple detailed reports that she had generated using Salesforce Database tools, and populated these reports with extensive proprietary Medcenter data about each Pharma Client, including their relationship contacts, Directed Projects pricing, past and current contract terms, and potential future Directed Projects and marketing strategies.

15

Am. Comp. ¶ 134 (emphasis added). Defendants argue that Am. Comp. ¶ 134 shows "that Medcenter's investigation was already underway in December 2016." Mem. at 2. This paragraph, however, was never cited or discussed when the initial motion was decided. It is well-established that "a party may not advance new facts, issues or arguments not previously presented to the Court on a motion for reconsideration." Steinberg, 2016 WL 1604764, at *1 (citation and internal quotation marks omitted). Thus, reconsideration must be denied.

In any case, even if we were to consider paragraph 134 now, it would not change our view as the paragraph is not sufficiently specific as to when precisely Medcenter knew that Aristu had improperly made use of trade secrets.

We conclude by emphasizing once again that our determination as to the timing of Medcenter's knowledge for purposes of this spoliation motion has no effect on any argument that defendants may make in the future regarding their statute of limitations defense in the context of a summary judgment motion or at trial.

Conclusion

For the foregoing reasons, the motion for reconsideration (Docket # 98) is granted. Medcenter is precluded from offering any evidence relying on or derived from the data that has been lost in the Salesforce Database, including evidence relying on or derived from the results of the Padilla investigation's use of the Salesforce Database.

SO ORDERED.

Dated: May 22, 2024
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge